THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
ROLANDO RODRIGUEZ, Defendant-Appellee.

Second District   No. 2—86—0639

Opinion filed October 21, 1987.

Robert J. Morrow, State's Attorney, of Geneva (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Timothy K. Mahoney, of McNamee & Mahoney, Ltd., of Dundee, for appellee.

JUSTICE NASH delivered the opinion of the court:

The State appeals from an order of the circuit court dismissing charges of child abduction (Ill. Rev. Stat. 1985, ch. 38, par. 10—5(b)(1)), residential burglary (Ill. Rev. Stat. 1985, ch. 38, par. 19—3), and battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—3(a)(1)) against defendant, Rolando Rodriguez, on double jeopardy grounds. The court found that defendant had previously been held in original contempt of court for the same conduct that resulted in the dismissed charges. The State contends on appeal that the contempt determination does not bar prosecution for the criminal charges.

On September 4, 1987, we filed an opinion affirming the trial court's dismissal of criminal charges against defendant, and the State

filed a petition for rehearing. While the State's petition was pending, the Illinois Supreme Court rendered its opinion in *People v. Totten* (1987), 118 Ill. 2d. 124, which we find to be dispositive of the issues in this case, and we vacate our original opinion.

Nadine Rodriguez filed a petition for dissolution of marriage and for a domestic violence order of protection against defendant on May 6, 1985. After hearings, the court awarded temporary custody of their minor child to Nadine, subject to visitation by defendant. The court also enjoined defendant from entering Nadine's residence and enjoined both of the parties from removing their child from the State and from striking, harassing, or interfering with the personal liberties of the other spouse.

On June 27, 1985, defendant was arrested for committing battery against Nadine, who stated that he entered her residence, struck her, and abducted their child. On that date, the judge presiding in the family court division of the circuit court heard Nadine's emergency motion for return of the minor child, a petition for rule to show cause, and a petition for a domestic violence order of protection. At the hearing, the judge asked defendant where the child was, to which defendant answered he did not know. The judge stated:

> "It is my opinion that you have the knowledge of the location of the child. There will be a finding of contempt. The only way you can purge yourself of contempt is to arrange for the return of the child. It will be my order."

In its written order, the court found defendant in contempt for failing to comply with the custody order and committed defendant to the county jail until he had purged the contempt by returning the child.

On June 28, 1985, the child was returned to Nadine, and a hearing in relation to the emergency motion was held at which no court reporter was present. The trial court entered a written order in which it found that defendant previously had been held in contempt, and having purged himself of civil contempt, it was ordered:

> "(1) Mittimus previously issued for direct civil contempt (order of 6/27/85) be and is hereby quashed instanter, and defendant be and is hereby ordered released subject to paragraph three below.
>
> (2) That the defendant is in indirect criminal contempt and sentenced to 60 days KCCC [Kane County Correctional Center], mittimus be and is hereby stayed instanter.
>
> (3) Bond in 85 CM 2165 [battery complaint] remains at $5,000.00, defendant to post 10% before being released from

Kane County Jail.

(4) Order of protection to enter instanter."

An indictment was thereafter returned against defendant in July 1985, charging the offenses of child abduction (Ill. Rev. Stat. 1985, ch. 38, par. 10—5(b)(1)) and residential burglary (Ill. Rev. Stat. 1985, ch. 38, par. 19—3), stemming from the occurrence on June 27, 1985. Defendant sought dismissal of the charges on the grounds that criminal jeopardy had attached to him when the contempt proceedings were instituted and that he could not properly be prosecuted again for the same conduct.

On July 2, 1986, the pending criminal charges against defendant were dismissed on double jeopardy grounds, the court finding that he had already been found guilty of criminal contempt and sentenced to 60 days in jail for his conduct on June 27, 1985. The court determined that defendant's sentence arose out of the same circumstances underlying the felony charges, namely, entering the home and taking the child; and, as witnesses were sworn, jeopardy attached regardless of whether a sentence was imposed.

We note initially that no appellee's brief was submitted in this appeal. Pursuant to *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133, 345 N.E.2d 493, we will consider the issue presented without the aid of an appellee's brief. See *People v. Gartner* (1986), 143 Ill. App. 3d 113, 115, 491 N.E.2d 927.

■ The State contends first that defendant failed to provide the trial court with a sufficient record to establish a double jeopardy claim. We disagree. The record was adequate to determine the events which prompted the contempt order as the trial court conducted a hearing to reconstruct the contempt proceedings that occurred on June 27 and 28, 1985. At the hearing, defense counsel stated that over the course of those two days defendant appeared before two different judges on four occasions and filed an affidavit to this effect. A court reporter was present at only one hearing, and the transcript of that proceeding was considered by the trial judge and is in the record on appeal. Additionally, Nadine and her attorney for those proceedings testified as to the events that occurred on June 27 and 28. Although the exact time of each court appearance was not documented, the identity of the persons present and the nature of each proceeding were certain, thus giving the trial court an adequate basis on which to consider defendant's claim of double jeopardy.

At issue in this case is whether the trial court properly determined that the orders entered on June 27 and 28, 1985, represented

criminal contempt convictions. The court in *People v. Lucas* (1986), 146 Ill. App. 3d 5, 10-11, 496 N.E.2d 525, recently discussed the concepts of civil and criminal contempt:

"Proceedings in the nature of civil contempt ordinarily are prosecuted to enforce the rights of private parties and to compel obedience to orders or decrees for the benefit of opposing parties. [Citation.] Proceedings in the nature of criminal contempt are directed to the preservation of the dignity and authority of the court, or a judge acting judicially. [Citation.] A sanction for civil contempt is coercive in nature and is instituted to compel obedience to a court order. The contemnor can avoid this sanction by compliance with the order. The sanction involved, such as incarceration, will continue in effect until there is compliance or termination of the sanction by the terms of the order itself. [Citation.] A sanction for criminal contempt is punitive in nature and is instituted to punish, as opposed to coerce, a contemnor for contumacious conduct. [Citation.] In sum, civil contempt occurs when the contemnor fails to do that which the court has ordered, whereas criminal contempt consists of doing that which has been prohibited. [Citations.]" *People v. Lucas* (1986), 146 Ill. App. 3d 5, 10-11, 496 N.E.2d 525.

■ In the order dated June 28, 1985, the trial court referred to both "direct civil contempt" and "indirect criminal contempt" findings, but a court's labeling of the nature of the contempt as criminal or civil is not conclusive. (*Shillitani v. United States* (1966), 384 U.S. 364, 369, 16 L. Ed. 2d 622, 626-27, 86 S. Ct. 1531, 1535.) The parties acknowledged before the trial court that if the contempt proceedings were civil in nature, it would not invoke the jeopardy provisions of the United States or the Illinois constitutions and the State could prosecute the defendant for the criminal charges.

■ The State argues that the proceedings on June 27 for entering Nadine's home and taking the child were civil. The transcript of that hearing discloses that defendant was only asked about the location of the child. After he denied knowing the child's location, and polygraph test results suggested he was untruthful, the court ordered that defendant be incarcerated until he returned the child. In our view, this contempt finding was civil, the purpose of which was coercive in order to compel the defendant to reveal the child's whereabouts, and defendant could avoid imprisonment by divulging this information. In sum, defendant "hold[s] the key to the cell," and he had it within his power to purge himself by complying with the

court's order. (*People v. Mowery* (1983), 116 Ill. App. 3d 695, 702, 452 N.E.2d 363.) We conclude that the contempt finding and order to purge entered on June 27, 1985, was for indirect civil contempt and did not give rise to jeopardy considerations.

The purpose of the second contempt finding in the order of June 28 is equally certain, as the order states that defendant was sentenced to 60 days' imprisonment for "indirect criminal contempt" and that the sentence was stayed.

■ The State contends that this finding of contempt was, in fact, for civil contempt, since it merely sought to insure defendant's compliance with any subsequent orders in the marital dissolution action. We cannot agree. As noted, no transcript of the proceeding which gave rise to the trial court's order is included in the record on appeal. The appellant in a criminal case has the responsibility to provide a complete record for review. A reviewing court will indulge in every reasonable presumption favorable to the conclusion reached by the trial court, and any doubt arising from an incomplete record will be resolved against the appellant. (*People v. Blake* (1985), 130 Ill. App. 3d 948, 956, 474 N.E.2d 892.) Here, the judge who issued the order of June 28, 1985, specifically stated that defendant was being held in "indirect criminal contempt," and a determinate sentence of 60 days' imprisonment was imposed, although stayed. A sentencing order in a civil contempt proceeding must contain an effective purging provision (*People v. Lucas* (1986), 146 Ill. App. 3d 5, 11, 496 N.E.2d 525) which is lacking here. It seems apparent that the purpose of the contempt order was to punish defendant for the abduction of his child, and we cannot, as the State suggests, speculate as to some other intent of the judge who issued the order.

■ In our previous opinion we applied *People v. Gray* (1977), 69 Ill. 2d 44, 370 N.E.2d 797, *cert. denied* (1978), 435 U.S. 1013, 56 L. Ed. 2d 395, 398 S. Ct. 1887, and determined that the trial court properly found that defendant's sentence for indirect criminal contempt arose out of the same conduct underlying the criminal charges of battery, child abduction, and residential burglary with intent to commit child abduction. However, the "same evidence" test set forth in *Gray* is no longer applicable. (*People v. Totten* (1987), 118 Ill. 2d 124.) Instead, under *Totten* the test to be applied to determine whether there are two offenses for double jeopardy purposes is " 'whether each provision requires proof of an additional fact which the other does not.' " (*People v. Totten* (1987), 118 Ill. 2d 124, quoting *Blockburger v. United States* (1932), 284 U.S. 299, 304, 76 L. Ed. 306, 309, 52 S. Ct. 180, 182.) The *Blockburger* test focuses on the elements of the offenses

charged, not the evidence presented at trial.

■ Applying the *Blockburger* test in the present case changes the result reached in our initial opinion. As the court noted in *Totten*, the elements of indirect criminal contempt are: (1) the existence of a court order; and (2) a wilful violation of that order. (*People v. Totten* (1987), 118 Ill. 2d 124, 138.) We must examine the elements of the criminal offenses charged against defendant to determine if the offenses are the same for double jeopardy purposes.

■ First, to convict defendant of the offense of battery in this cause the State must prove that he caused bodily harm to Nadine Rodriguez, and did so intentionally. (Ill. Rev. Stat. 1985, ch. 38, par. 12—3(a)(1).) The court's analysis of the offense of aggravated battery in *Totten* is applicable to battery as well. Thus, since battery requires proof of bodily harm, does not require proof of the existence of a court order, and requires proof of a different state of mind, it is not the same offense as indirect criminal contempt for double jeopardy purposes. See *People v. Totten* (1987), 118 Ill. 2d 124, 138.

■ Next, to sustain the charge of residential burglary with intent to commit child abduction requires proof that defendant entered the dwelling place of another with intent to commit the felony of child abduction. (Ill. Rev. Stat. 1985, ch. 38, par. 19—3.) Since residential burglary requires proof that defendant entered the dwelling place of another and indirect criminal contempt does not, we conclude that these offenses are not the same offense under the *Blockburger* test.

■ Finally, we consider the offense of child abduction with which defendant was charged pursuant to the following statutory provision:

> "A person commits child abduction when he or she: (1) Intentionally violates any terms of a valid court order granting sole or joint custody to another, by concealing or detaining the ·child or removing the child from the jurisdiction of the court." (Ill. Rev. Stat. 1985, ch. 38, par. 10—5(b)(1).)

It is apparent from the language of the statute that child abduction and indirect criminal contempt for failure to comply with a custody order are virtually the same offense and each offense requires proof that defendant intentionally violated a custody order. We consider that, under the *Blockburger* test, the State cannot prosecute the offense of child abduction in this case without placing defendant in double jeopardy.

We conclude that the State may prosecute defendant for battery and residential burglary with intent to commit child abduction without placing defendant in double jeopardy. However, the State may

not in this cause prosecute him for child abduction, since this would violate defendant's right to be free from double jeopardy.

Accordingly, the judgment of the circuit court of Kane County is reversed in part, affirmed in part, and the cause remanded for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

LINDBERG, P.J., and INGLIS, J., concur.