THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
CHARLES H. LUCAS, Defendant-Appellee.

Third District   No. 3—85—0218

Opinion filed May 25, 1988.

Norman K. Rafferty, State's Attorney, of Hennepin (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Mark D. Fisher, of State Appellate Defender's Office, of Ottawa, for appellee.

JUSTICE SPITZ delivered the opinion of the court:

The State appealed (107 Ill. 2d R. 604) from an order of the circuit court of Putnam County dismissing charges of aggravated assault (No. 84—CM—19) and battery (No. 84—CM—24) (Ill. Rev. Stat. 1985, ch. 38, pars. 12—2(a)(1), 12—3) against defendant Charles H. Lucas on double jeopardy grounds. On appeal, this court affirmed the judgment of the circuit court based upon the supreme court's decisions in *People v. Gray* (1977), 69 Ill. 2d 44, 370 N.E.2d 797, *cert. denied* (1978), 435 U.S. 1013, 56 L. Ed. 2d 395, 98 S. Ct. 1887. (*People v. Lucas* (1986), 146 Ill. App. 3d 5, 496 N.E.2d 525.) The supreme court has vacated that judgment and remanded the cause to this court for further consideration in light of its decision in *People v. Totten* (1987), 118 Ill. 2d 124, 514 N.E.2d 959, overruling portions of its decision in *Gray*. *People v. Lucas* (Dec. 17, 1987), Docket No. 64082 (unpublished supervisory order).

The record discloses that on May 8, 1984, Carolyn A. Lucas, then the defendant's wife, filed a motion in a pending dissolution proceeding (*In re Marriage of Lucas*, No. 84—D—7), seeking temporary custody, support, maintenance, injunctive and temporary relief, and a temporary restraining order. That day the trial court entered an agreed order in that cause, restraining both parties from "striking or otherwise interfering with [the] personal liberty of the other," and awarding Carolyn temporary and exclusive possession of the marital residence.

On May 17, 1984, defendant apparently telephoned Carolyn and "engaged in a series of verbal threats *** [stating] that he would commit some illegal and/or criminal act which would result in his incarceration *** for approximately 20 years." Also that day defendant "forcefully broke into the marital residence *** and remained [there] throughout [that] evening." As a result of this incident, Carolyn filed a petition for rule to show cause on May 21, 1984, alleging that defendant's "conduct *** constitutes a wilful and intentional failure and refusal to abide by the terms of *** the agreed Court Order entered *** May 8, 1984." On May 22, 1984, the trial court entered a rule to show cause and set the matter for hearing. At the May 29,

1984, hearing on the rule to show cause, the parties stipulated to the facts and to the disposition. Then on June 19, 1984, the court entered an order on the rule to show cause that found defendant to be in contempt of court for the wilful failure and refusal to obey the May 8, 1984, court order. This order stayed sentencing on the contempt, and defendant was ordered to continue regular counseling and treatment with Alcoholics Anonymous and his psychiatrist and was to comply with all previous court orders.

On June 24, 1984, defendant again entered the marital residence, during which time he allegedly held Carolyn in a "strangle hold," while holding a knife to her throat, and stated that he "was going to get even now; for kicking him out of his house." On June 26, 1984, Carolyn signed a criminal complaint (No. 84—CM—19), charging defendant with aggravated assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—2(a)(1)). Due to this incident, counsel representing Carolyn in the dissolution proceeding filed a notice on June 27, 1984, requesting the contempt matter be called for sentencing. The matter was continued to July 10, 1984, at which time the trial court entered an agreed order, sentencing defendant on the contempt to one weekend of incarceration and two additional weeks of work release. The imposition of work release was stayed and was to be "implemented only upon [defendant's] failure *** to comply with the terms and provisions of all orders of [the] court."

On September 1, 1984, defendant allegedly struck Carolyn "8 to 9 times in the back of the head and neck with a beer glass until the glass broke leaving pieces of glass in her neck." Following this incident, Carolyn signed a complaint (No. 84—CM—24) charging defendant with battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—3). On September 4, 1984, Carolyn filed a petition for rule to show cause based on this incident, alleging that defendant had again wilfully violated the terms of the May 8, 1984, restraining order. The court issued the rule to show cause and set the matter for hearing.

On September 25, 1984, a sentencing hearing was held on the second rule to show cause. Thereafter, the court entered an agreed order finding that defendant had served two weeks' work release, as previously ordered on July 10, 1984, concurrently with his confinement on the pending criminal charges. In sentencing on the contempt, the court ordered defendant to continue "in hospitalization alcohol treatment at the Ottawa Community Hospital" with his psychiatrist. Defendant was further ordered to: "[C]ontinue work release concurrent with the work release ordered as a condition of his criminal bond. Work release shall terminate when he is committed to the Ot-

tawa Community Hospital by [his psychiatrist]."

On October 9, 1984, the pending aggravated assault and battery prosecutions (Nos. 84—CM—19, 84—CM—24) were continued subject to being called in by notice. No action had been taken on these cases prior to this time, other than defendant entering pleas of not guilty to both criminal charges.

Thereafter, on November 20, 1984, an agreed order modifying defendant's visitation was entered in the dissolution proceedings, in which the following findings were made:

"1. That as a result of incidents occurring on June [24], 1984, and September 1, 1984, during which respondent assaulted the petitioner, respondent has served a period of work release for his indirect criminal contempt of court for his failure to obey the order of court of May 8, 1984, restraining him from striking the petitioner.

2. That, respondent was further ordered as part of said sentencing to be treated by Dr. Chuprevich which treatment had included in-hospitalization alcohol treatment at the Ottawa Community Hospital ***."

Then on March 5, 1985, defendant filed a motion for discharge contending that the criminal prosecutions were barred, pursuant to the prohibitions against double jeopardy, because he had been previously punished for the criminal offenses when he was sentenced for indirect criminal contempt of court in the dissolution proceedings. Following a hearing on March 12, 1985, the trial court ruled that defendant had been previously punished for indirect criminal contempt for incidents out of which the criminal charge arose, and that the evidence presented on the contempt charges would sustain the criminal charges. The court then dismissed the criminal charges and discharged the defendant on the grounds of double jeopardy, relying on Gray. The State appealed (107 Ill. 2d R. 604), and this court affirmed the dismissal of the criminal charges against defendant based upon the supreme court's decision in *Gray.* (*Lucas*, 146 Ill. App. 3d 5, 496 N.E.2d 525.) The State then filed a petition for leave to appeal to the Illinois Supreme Court. On October 20, 1987, the supreme court issued a supervisory order allowing the State's petition for leave to appeal and reversing the decision of this court. (*People v. Lucas* (1987), 116 Ill. 2d 569, 515 N.E.2d 1222 (supervisory order).) Thereafter, defendant filed a petition for rehearing in the supreme court. On December 17, 1987, the supreme court issued a supervisory order allowing defendant's petition for rehearing and vacating its prior supervisory order. The supreme court also vacated the judgment of this court

and remanded the cause to this court for further consideration in light of its decision in *People v. Totten* (1987), 118 Ill. 2d 124, 514 N.E.2d 959, overruling portions of the *Gray* decision. *People v. Lucas* (Dec. 17, 1987), Docket No. 64082 (unpublished supervisory order).

The State contends that the circuit court erred in dismissing the charges of aggravated assault and battery against the defendant on double jeopardy grounds, in light of the supreme court's decision in *Totten*, and the Second District Appellate Court's decision in *People v. Rodriquez* (1987), 162 Ill. App. 3d 149, 514 N.E.2d 1033. The State also reasserts the remaining arguments from its initial brief as further grounds for the reversal of the trial court's order dismissing the charges against the defendant.

The defendant concedes that the supreme court's decision in *Totten* requires reversal of the trial court's order dismissing the aggravated assault charge. Defendant asserts, however, that the prosecution of the battery charge is barred by the protection against double jeopardy and, therefore, the dismissal of the battery charge was proper.

In the instant case, defendant was charged by information with aggravated assault for holding his wife in a stranglehold with a knife to her throat while threatening her, and with battery for striking his wife repeatedly about the head and neck with a beer glass. Thereafter, the circuit court found that defendant had violated the order of protection it had previously entered in defendant's pending action for dissolution of marriage, adjudged him in indirect criminal contempt, and sentenced defendant on the contempt findings. Prior to trial, defendant moved to dismiss the criminal charges on the basis of double jeopardy. The circuit court applied the "same evidence" test articulated in *Gray* and dismissed the charges as being violative of the protection against double jeopardy.

■ Recently, the supreme court in *Totten* rejected the "same evidence" test set forth in *Gray* and held that the test to be applied to determine if two offenses are the same for double jeopardy purposes is " 'whether each provision requires proof of a fact which the other does not.' " *Totten*, 118 Ill. 2d at 137, 514 N.E.2d at 964, quoting *Blockburger v. United States* (1932), 284 U.S. 299, 304, 76 L. Ed. 2d 306, 309, 52 S. Ct. 180, 182.

· The *Totten* court decided two consolidated cases, one of which is substantially indistinguishable from the case at bar (cause No. 63531). Cause No. 63531 involved the issue of whether indirect criminal contempt and aggravated battery are the same offense for purposes of the double jeopardy clause. The supreme court applied the *Block-*

*burger* test, set forth above, which focuses on the elements of the offenses charged rather than the evidence presented at trial. (*Illinois v. Vitale* (1980), 447 U.S. 410, 416, 65 L. Ed. 2d 228, 235, 100 S. Ct. 2260, 2265; *People v. Mueller* (1985), 109 Ill. 2d 378, 388-90, 488 N.E.2d 523, 532.) The court noted that under the *Blockburger* test, if each offense requires proof of an additional fact not required to prove the other, then the two offenses are not the same for double jeopardy purposes.

In applying the *Blockburger* test to the offenses in cause No. 63531, the *Totten* court reasoned:

> "To sustain a finding of indirect criminal contempt for the violation of a court order outside the presence of the court, two elements must be proved: (i) the existence of a court order, and (ii) a willful violation of that order. (*People v. Wilcox* (1955), 5 Ill. 2d 222, 228.) To sustain the charge *** in the information, the State must prove the following elements: (i) the defendant caused great bodily harm to [the victim], and (ii) that he did so intentionally. Thus, while aggravated battery, as alleged in this case, requires proof of great bodily harm, indirect criminal contempt does not. And indirect criminal contempt, unlike aggravated battery, requires proof of the existence of a court order. Finally, each offense requires proof of a different state of mind. Since each offense requires proof of a fact which the other does not, they do not constitute the same offense under the *Blockburger* test." *Totten*, 118 Ill. 2d at 138, 514 N.E.2d at 965.

Additionally, the court explained that aggravated battery is not a lesser-included offense of indirect criminal contempt, nor is indirect criminal contempt for violating a protective order a lesser-included offense of aggravated battery. Thus, the court concluded that indirect criminal contempt and aggravated battery are two separate and distinct offenses and held that prosecution of the aggravated battery charge would not offend the double jeopardy clause. In so holding, the court overruled its decision in *Gray* "to the extent it is inconsistent with the views expressed" therein. *Totten*, 118 Ill. 2d at 139, 514 N.E.2d at 965.

As noted earlier, the instant case is substantially indistinguishable from cause No. 63531 decided by the *Totten* court. However, there is one distinction between the two cases. While this case and cause No. 63531 both involved findings of indirect criminal contempt, the instant defendant was charged with aggravated assault and battery, whereas the *Totten* defendant was charged with aggravated battery. Accordingly, we must apply the *Blockburger* test to the criminal offenses

charged against the defendant in the present case to determine whether these offenses are the same as indirect criminal contempt for double jeopardy purposes.

We first consider the offense of aggravated assault with which the defendant was charged. To sustain the charge of aggravated assault as alleged in the information, the State must prove the following elements: (1) the defendant, without lawful authority, engaged in conduct which placed another in reasonable apprehension of receiving a battery, and (2) in committing the assault, he used a deadly weapon. (Ill. Rev. Stat. 1985, ch. 38, par. 12—2(a)(1).) To sustain a finding of indirect criminal contempt for the violation of a court order outside the presence of the court, two elements must be proved: (1) the existence of a court order, and (2) a wilful violation of that order. (*Totten*, 118 Ill. 2d 124, 514 N.E.2d 959; *People v. Wilcox* (1955), 5 Ill. 2d 222, 125 N.E.2d 453.) Hence, while aggravated assault, as alleged in the case at bar, requires proof of use of a deadly weapon, indirect criminal contempt does not. Conversely, while indirect criminal contempt requires proof of the existence of a court order, aggravated assault does not. As each offense requires proof of a fact which the other does not, they do not constitute the same offense under the *Blockburger* test. *Totten*, 118 Ill..2d 124, 514 N.E.2d 959.

Next, to sustain the charge of battery, the State must prove: (1) the defendant caused bodily harm to his former spouse, and (2) he did so intentionally. (Ill. Rev. Stat. 1985, ch. 38, par. 12—3(a)(1).) Thus, battery requires proof of bodily harm upon the victim, an element not necessarily required to prove indirect criminal contempt for the violation of the protective order in this case. Further, indirect criminal contempt, unlike battery, requires proof of the existence of a court order. Finally, each offense requires proof of a different state of mind. As each of these offenses requires proof of a fact which the other does not, they are not the same offense under the *Blockburger* test. (*Totten*, 118 Ill. 2d 124, 514 N.E.2d 959; *Rodriquez*, 162 Ill. App. 3d 149, 514 N.E.2d 1033.) We point out that the same conclusion was reached by the court in *Rodriquez*. There, the court held that since battery requires proof of bodily harm, does not require proof of the existence of a court order, and requires proof of a different mental state, it is not the same offense as indirect criminal contempt for double jeopardy purposes.

For the foregoing reasons, we conclude that prosecution of the aggravated assault and battery charges would not offend the double jeopardy clause of the fifth amendment. In view of our conclusion, we deem it unnecessary to address the remaining contentions advanced

by the State as alternative grounds for reversal of the trial court's dismissal order.

Accordingly, the judgment of the circuit court of Putnam County is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

GREEN, P.J., and LUND, J., concur.